**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY**

| | | |
|---|---|---|
| **GARY FLOYD,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case no.: 2:22-cv-2130 |
| | ) | |
| **UNIFIED SCHOOL DISTRICT 234** | **)** | |
| **A/K/A FORT SCOTT USD 234** | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff Gary Floyd, by and through counsel, for his Complaint against Defendant Unified School District 234 also known as Fort Scott USD 234 ("Defendant" or "Defendant Fort Scott USD 234") states as follows:

### Parties

1.     Plaintiff Gary Floyd is an African American male residing in Bourbon County, Kansas. Plaintiff Floyd is a former paraprofessional at Fort Scott Middle School. Plaintiff Floyd was also employed as the football coach and boys' basketball coach at Fort Scott Middle School.

2.     Defendant Fort Scott USD 234 is a public unified school district headquartered at 424 S. Main, Fort Scott, Bourbon County, Kansas, 66701. The district operates the following schools: Fort Scott High School, Fort Scott Middle School, Eugene Ware Elementary School, Winfield Scott Elementary School, and Fort Scott Preschool Center.

3.     At all relevant times, Defendant was an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et*

1

*seq.* ("Title VII").

4. At all relevant times, Defendant Fort Scott USD 234 employed 501 or more persons.

## Exhaustion of Administrative Remedies.

5. On or about April 29, 2021, Plaintiff Floyd timely filed with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") a charge of race discrimination, racial harassment/hostile work environment, and retaliation against Defendant (attached as Exhibit A and incorporated herein by reference).

6. On or about March 15, 2022, the EEOC issued to plaintiff his Notice of Right to Sue (attached hereto as Exhibit B and incorporated herein by reference), and this lawsuit was filed within 90 days of the issuance of the Notice of Right to Sue.

7. The aforesaid charge of discrimination provided the EEOC and/or the KHRC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC and/or KHRC investigation that could reasonably have been expected to have grown out of the investigation.

8. Plaintiff Floyd has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## Jurisdiction and Venue

9. The Court has jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), as well as 42 U.S.C. § 2000e-5(f)(3).

10. The Court has jurisdiction over Defendant because the unlawful employment practices alleged in this Complaint were committed in Bourbon County, Kansas which lies within

the District of Kansas and because Defendant conducts business within this District.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events and occurrences giving rise to Plaintiff's claims occurred in Bourbon County, Kansas which lies withing the District of Kansas and because Defendant resides within this District.

**Factual Allegations**

12. Plaintiff Floyd, a paraprofessional, began his employment with Defendant Fort Scott USD 234 working at Fort Scott Middle School in approximately July 2019. Plaintiff Floyd was also hired as the football coach and boys' basketball coach at Fort Scott Middle School.

13. During his employment with Defendant Fort Scott USD 234, Plaintiff Floyd was the only African American faculty member at Fort Scott Middle School.

14. Plaintiff satisfactorily performed his job duties with Defendant during his employment.

15. During all relevant times, Defendant also employed Jannah Farrington.

16. Farrington was the lead special education teacher for Fort Scott Middle School and was Plaintiff Floyd's immediate supervisor.

17. During Plaintiff Floyd's employment with Defendant, Farrington subjected him to offensive and unwelcome conduct, derogatory language, and comments that were directed at his race. Plaintiff Farrington's racially offensive conduct included, for example:

- prohibiting Plaintiff Floyd and African American students in his class from making Black Lives Matters signs (although other students in the school already displayed similar signs) and emphasizing that she was "sick of this black stuff," was "tired of everybody thinking that blacks are being mistreated," and commenting that "you people" always try to cause problems.
- asking Plaintiff Floyd in an offensive manner if he wanted to be called black, African American, or "colored."

- commenting she needed to watch what she said because of "you people" referring to Plaintiff Floyd and the black students.
- telling Plaintiff Floyd that "ain't no Ni-, no people like you gonna tell me what I need to do."

18. Farrington's conduct was offensive to Floyd, and he complained about that conduct. Nonetheless, Farrington's conduct continued.

19. During all relevant times, M.W. was a student at Fort Scott Middle School and assigned to the classroom where Floyd provided paraprofessional services.

20. During Floyd's employment with Defendant, M.W. subjected him to offensive and unwelcome conduct, derogatory language, and comments directed at his race including for example: repeatedly calling Plaintiff Floyd a "nigger" and threatening Plaintiff Floyd with violence by stating he would kill his wife and family.

21. M.W.'s conduct was offensive to Floyd, and he complained about that conduct. Nonetheless, M.W.'s conduct continued.

22. M.W.'s conduct included, but was not limited to:

23. During all relevant times, Matt Harris was the Vice Principal of Fort Scott Middle School.

24. During all relevant times, David Brown was the Principal of Fort Scott Middle School.

25. During all relevant times, Ted Hessong was the Superintendent of Defendant Fort Scott USD 234.

26. Farrington was present on occasions when M.W. called Plaintiff Floyd a nigger.

27. Vice Principal Matt Harris present when M.W. called Plaintiff Floyd a nigger and said he was going to kill Plaintiff Floyd's wife and family.

28. Additionally, Plaintiff Floyd made multiple complaints concerning the racially offensive conduct of Farrington and M.W. to supervisory employees of Defendant Fort Scott USD

234 including Farrington, Principal David Brown, and Superintendent Ted Hessong.

29. As a result, Defendant knew or should have known of Farrington and M.W.'s racially offensive and improper conduct but failed to take prompt and appropriate corrective action to end the harassment of Plaintiff Floyd.

30. Instead, on the day Plaintiff Floyd made his last complaint of discrimination and harassment, Defendant Fort Scott USD 234 terminated his employment.

31. The Fort Scott Board of Education (the "Board") approved and ratified this termination decision at its April 12, 2021 board meeting by unanimous vote.

## COUNT I
### (Violation Under Title VII of the Civil Rights Act – Racial Discrimination – Hostile Work Environment)

32. Plaintiff Floyd incorporates by reference the foregoing paragraphs of this Complaint into this count.

33. As an African American, Plaintiff Floyd is a member of a class of persons protected by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., by virtue of his race.

34. As stated previously, Farrington and M.W. subjected Plaintiff Floyd to offensive and unwelcome conduct, derogatory language, and comments that were directed at his race.

35. This racially motivated conduct was offensive to Floyd, and he complained about that conduct. Nonetheless, the conduct continued.

36. Farrington and M.W.'s conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff Floyd's position would find Plaintiff Floyd's work environment to be hostile or abusive.

37. At the time Farrington and M.W.'s conduct occurred and as a result of that conduct, Plaintiff Floyd believed his work environment to be hostile and abusive.

38. Farrington and M.W.'s conduct adversely affected the terms, conditions, and/or privileges of Plaintiff Floyd's employment with Defendant and unreasonably interfered with Plaintiff Floyd's work performance, and Defendant allowed its workplace to become permeated with racial epithets, discriminatory intimidation, insult and ridicule.

39. Given Plaintiff Floyd's numerous complaints, Defendant knew or should have known of Farrington and M.W.'s improper conduct but failed to take prompt and appropriate corrective action to end Farrington and M.W.'s harassment of Plaintiff Floyd. Instead, Defendant terminated Plaintiff Floyd.

40. As shown by the foregoing, Plaintiff Floyd suffered intentional race-based discrimination at the hands of Farrington, M.W., and Defendant during the course of his employment with Defendant in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

41. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff Floyd has been deprived of income.

42. As further and direct proximate result of Defendant's actions and/or inactions, Plaintiff Floyd has suffered emotional distress and mental anguish, pain and suffering, humiliation, and related compensatory damages.

43. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including racial harassment.

44. Defendant failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

45. The individuals responsible for setting or enforcing Defendant's policy in the area of discrimination were aware of Plaintiff Floyd's complaints of harassment but failed to

appropriately respond to those complaints. Instead, Defendant terminated Plaintiff Floyd's employment.

46. By failing to take prompt and effective remedial action, and instead terminating Plaintiff Floyd's employment, Defendant in effect condoned, ratified and/or authorized the harassment of Plaintiff.

47. Defendant, by its negligence or otherwise, subjected Plaintiff Floyd to racial discrimination and maintained or allowed to exist a work environment overrun by racial antagonism.

48. Plaintiff Floyd is entitled to recover from Defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Floyd requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### COUNT II
**(Violation of 42 U.S.C. § 1981 Under 42 U.S.C. § 1983 –**
**Racial Discrimination – Hostile Work Environment)**

49. Plaintiff Floyd hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

50. 42 U.S.C. § 1983 provides the basis for Plaintiff Floyd to bring a 42 U.S.C. § 1981 claim against a quasi-municipal agency such as Defendant Fort Scott USD 234.

51. As an African American, Plaintiff Floyd is a member of a class of persons protected by 42 U.S.C. § 1981, by virtue of his race.

52. During his employment with Defendant, Plaintiff Floyd had a contractual employment

relationship with Defendant, the terms of which included, but were not limited to, the right to be free from unlawful discrimination, harassment, and retaliation.

53. As stated previously, Farrington and M.W. subjected Plaintiff Floyd to offensive and unwelcome conduct, derogatory language, and comments that were directed at his race.

54. This racially motivated conduct was offensive to Floyd, and he complained about that conduct. Nonetheless, the conduct continued.

55. Farrington and M.W.'s conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff Floyd's position would find Plaintiff Floyd's work environment to be hostile or abusive.

56. At the time Farrington and M.W.'s conduct occurred and as a result of that conduct, Plaintiff Floyd believed his work environment to be hostile and abusive.

57. Farrington and M.W.'s conduct adversely affected the terms, conditions, and/or privileges of Plaintiff Floyd's employment with Defendant and unreasonably interfered with Plaintiff Floyd's work performance, and Defendant allowed its workplace to become permeated with racial epithets, discriminatory intimidation, insult and ridicule.

58. Given Plaintiff Floyd's numerous complaints, Defendant knew or should have known of Farrington and M.W.'s improper conduct but failed to take prompt and appropriate corrective action to end Farrington and M.W.'s harassment of Plaintiff Floyd. Instead, Defendant terminated Plaintiff Floyd.

59. As shown by the foregoing, Plaintiff Floyd suffered intentional race-based discrimination at the hands of Farrington, M.W., and Defendant during the course of his employment with Defendant in violation of 42 U.S.C. § 1981.

60. Pursuant to 42 U.S.C. § 1983, liability arises against a quasi-municipal agency when a

violation of 42 U.S.C. § 1981 is caused by a "custom" or "policy" of that agency.

61. An action or inaction is per se "custom" or "policy" when it is taken or ratified by the ultimate policymaking authority for the Defendant.

62. The ultimate policymaking authority of Defendant Fort Scott USD 234 is the Fort Scott Board of Education (the "Board").

63. The Board failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including racial harassment.

64. The Board failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including 42 U.S.C. § 1981.

65. The Board, by its negligence or otherwise, subjected Plaintiff Floyd to racial harassment and maintained or allowed to exist a work environment overrun by racial antagonism.

66. Upon information and belief, the Board was aware of Plaintiff Floyd's complaints of harassment and discrimination but failed to appropriately respond to those complaints.

67. The Board delegated to Principal Brown the final policymaking authority to discharge employees of Fort Scott Middle School.

68. Brown made the decision to discharge Plaintiff Floyd.

69. The Board then approved and ratified Brown's policy decision to discharge Plaintiff Floyd.

70. By failing to take prompt and effective remedial action, and instead approving the termination Plaintiff Floyd's employment, the Board in effect condoned, ratified and/or authorized the harassment of Plaintiff.

71. Therefore, Defendant is liable for the aforementioned hostile work environment under

42 U.S.C. § 1983.

72. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff Floyd has been deprived of income.

73. As further and direct proximate result of Defendant's actions and/or inactions, Plaintiff Floyd has suffered emotional distress and mental anguish, pain and suffering, humiliation, and related compensatory damages.

74. Plaintiff Floyd is entitled to recover from Defendant reasonable attorneys' fees, as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Floyd requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### COUNT III
### (Violation Under Title VII of the Civil Rights Act –
### Racial Discrimination – Discriminatory Termination)

75. Plaintiff Floyd hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

76. As an African American, Plaintiff Floyd is a member of a class of persons protected by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., by virtue of his race.

77. On or about March 26, 2021, after Plaintiff made complaints of race discrimination and harassment, Defendant terminated Plaintiff's employment.

78. Plaintiff Floyd's race was a motivating factor in Defendant's decision to terminate his employment. Defendant therefore violated Title VII.

79. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff Floyd

has been deprived of income.

80. As further and direct proximate result of Defendant's actions and/or inactions, Plaintiff Floyd has suffered emotional distress and mental anguish, pain and suffering, humiliation, and related compensatory damages.

81. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

82. Defendant failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

83. The individuals responsible for setting or enforcing Defendant's policy in the area of discrimination were aware of Plaintiff Floyd's complaints of harassment and discrimination but failed to appropriately respond to those complaints. Instead, Defendant terminated Plaintiff Floyd's employment.

84. Defendant subjected Plaintiff Floyd to racial discrimination and maintained or allowed to exist a work environment overrun by racial antagonism.

85. Plaintiff Floyd is entitled to recover from Defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Floyd requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

**COUNT IV**
**(Violation of 42 U.S.C. § 1981 Under 42 U.S.C. § 1983 –**
**Racial Discrimination – Discriminatory Termination)**

86. Plaintiff Floyd hereby incorporates by reference the foregoing paragraphs of this

Complaint into this count.

87. 42 U.S.C. § 1983 provides the basis for Plaintiff Floyd to bring a 42 U.S.C. § 1981 claim against a quasi-municipal agency such as Defendant Fort Scott USD 234.

88. As an African American, Plaintiff Floyd is a member of a class of persons protected by 42 U.S.C. § 1981, by virtue of his race.

89. During his employment with Defendant, Plaintiff Floyd had a contractual employment relationship with Defendant, the terms of which included, but were not limited to, the right to be free from unlawful discrimination, harassment, and retaliation.

90. On or about March 26, 2021, after Plaintiff made complaints of race discrimination and harassment, Defendant terminated Plaintiff's employment.

91. Plaintiff Floyd was terminated because of his race in violation of 42 U.S.C. § 1981

92. Pursuant to 42 U.S.C. § 1983, liability arises against a quasi-municipal agency when a violation of 42 U.S.C. § 1981 is caused by a "custom" or "policy" of that agency.

93. An action or inaction is per se "custom" or "policy" when it is taken or ratified by the ultimate policymaking authority for the Defendant.

94. The ultimate policymaking authority of Defendant Fort Scott USD 234 is the Fort Scott Board of Education (the "Board").

95. The Board failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

96. The Board failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including 42 U.S.C. § 1981.

97. The Board delegated to Principal Brown the final policymaking authority to discharge

employees of Fort Scott Middle School.

98. Brown made the decision to discharge Plaintiff Floyd.

99. The Board then approved and ratified Brown's policy decision to discharge Plaintiff Floyd.

100. Defendant is therefore liable for this discriminatory termination pursuant to 42 U.S.C. § 1983.

101. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff Floyd has been deprived of income.

102. As further and direct proximate result of Defendant's actions and/or inactions, Plaintiff Floyd has suffered emotional distress and mental anguish, pain and suffering, humiliation, and related compensatory damages.

103. Plaintiff Floyd is entitled to recover from Defendant reasonable attorneys' fees, as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Floyd requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### COUNT V
**(Violation Under Title VII of the Civil Rights Act – Retaliation)**

104. Plaintiff Floyd hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

105. After Plaintiff Floyd complained several times to Defendant about the discriminatory conduct and offensive and unwelcome harassing conduct to which he was being subjected, Defendant retaliated against him for exercising his federally and statutorily protected

13

rights by adversely altering the terms, conditions and/or privileges of his continued employment, including, but not limited to, terminating his employment.

106. Indeed, Defendant terminated Plaintiff Floyd because of these complaints. Defendant therefore violated Section 704 of Title VII, 42 U.S.C. § 2000e-3(a).

107. As a direct and proximate result of Defendant's actions, Plaintiff Floyd has been deprived of income.

108. As a further direct and proximate result of Defendant's actions, Plaintiff Floyd has suffered emotional distress and mental anguish, pain and suffering, humiliation, and related compensatory damages.

109. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation for making complaints of discrimination and racial harassment.

110. Defendant failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

111. The individuals responsible for setting or enforcing Defendant's policy in the area of discrimination were aware of Plaintiff Floyd's complaints of discrimination and harassment but failed to appropriately respond to those complaints. Instead, they retaliated by terminating Plaintiff Floyd's employment.

112. Plaintiff Floyd is entitled to recover from Defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Floyd requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

**COUNT VI**
**(Violation of 42 U.S.C. § 1981 Under 42 U.S.C. § 1983 – Retaliation)**

113. Plaintiff Floyd hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

114. 42 U.S.C. § 1983 provides the basis for Plaintiff Floyd to bring a 42 U.S.C. § 1981 claim against a quasi-municipal agency such as Defendant Fort Scott USD 234.

115. During his employment with Defendant, Plaintiff Floyd had a contractual employment relationship with Defendant, the terms of which included, but were not limited to, the right to be free from unlawful discrimination, harassment, and retaliation.

116. After Plaintiff Floyd complained several times to Defendant about the discriminatory conduct and offensive and unwelcome harassing conduct to which he was being subjected, Defendant retaliated against him for exercising his federally and statutorily protected rights by adversely altering the terms, conditions and/or privileges of his continued employment, including, but not limited to, terminating his employment.

117. Defendant terminated Plaintiff Floyd because of these complaints in violation of 42 U.S.C. § 1981.

118. Pursuant to 42 U.S.C. § 1983, liability arises against a quasi-municipal agency when a violation of 42 U.S.C. § 1981 is caused by a "custom" or "policy" of that agency.

119. An action or inaction is per se "custom" or "policy" when it is taken or ratified by the ultimate policymaking authority for the Defendant.

120. The ultimate policymaking authority of Defendant Fort Scott USD 234 is the Fort Scott School Board (the "Board").

121. The Board failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

122. The Board failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including 42 U.S.C. § 1981.

123. The Board delegated to Principal Brown the final policymaking authority to discharge employees of Fort Scott Middle School.

124. Brown made the decision to discharge Plaintiff Floyd.

125. The Board then approved and ratified Brown's policy decision to discharge Plaintiff Floyd.

126. Defendant is therefore liable for this retaliatory termination pursuant to 42 U.S.C. § 1983.

127. As a direct and proximate result of Defendant's actions, Plaintiff Floyd has been deprived of income.

128. As a further direct and proximate result of Defendant's actions, Plaintiff Floyd has suffered emotional distress and mental anguish, pain and suffering, humiliation, and related compensatory damages.

129. Plaintiff Floyd is entitled to recover from Defendant reasonable attorneys' fees, as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Floyd requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### Demand for Jury Trial

Plaintiff Floyd hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial pursuant to Federal Rule of Civil Procedure 38(b).

<u>**DESIGNATION OF PLACE OF TRIAL**</u>

Plaintiff hereby designates the United States District Court of the District of Kansas at Kansas City as the place of trial.


Dated: April 8, 2022

Respectfully submitted,

**DAVIS GEORGE MOOK LLC**

/s/ *Nicholas J. Walker*
Nicholas J. Walker KS Bar No. 21951
**DAVIS GEORGE MOOK LLC**
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tel. 816-569-2629
Fax.  816-447-3939
E-mail: nick@dgmlawyers.com
www.dgmlawyers.com

**Attorney For Plaintiff**